UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA AUGUSTINE and TERRI GARFINKEL individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TALKING RAIN BEVERAGE COMPANY, INC., a Washington corporation,<br><br>Defendant. | Case No.: 18-cv-2576-CAB-BGS<br><br>**ORDER ON MOTION TO DISMISS [Doc. No. 14]** |

This matter comes before the Court on Talking Rain Beverage Company Inc.'s ("Talking Rain") motion to dismiss. [Doc. No. 14.] The motion has been fully briefed and the Court finds it suitable for determination on the papers and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.     PROCEDURAL BACKGROUND**

On November 9, 2018, Plaintiffs filed a consumer class action complaint against Talking Rain, seeking damages and equitable relief for the alleged false and misleading labeling on Defendant's Sparkling Ice products. [Doc. No. 1, at ¶¶ 1-7.] The complaint alleges violations of California's False Advertising Law ("FAL") Business & Professions Code § 17500, *et seq.;* the Unfair Competition Law, Business & Professions Code § 17200, *et seq*. ("UCL"); California's Consumers Legal Remedies Act, California Civil Code §

1750, *et seq.* ("CLRA"); fraud by omission; negligent misrepresentation; breach of express warranties; and breach of implied warranties.

On January 28, 201, Plaintiffs filed the First Amended Complaint ("FAC"). [Doc. No. 12.] The FAC asserts FAL, UCL, CLRA, fraud by omission; negligent misrepresentation; breach of express warranties; and breach of implied warranties against Defendant for misrepresenting and misleading consumers regarding the Sparkling Ice beverages (the "Products").[1] [*Id.*] The FAC alleges that "the Products are labeled as if they are flavored only with natural ingredients when they in fact contain an undisclosed artificial flavor, d-1-malic acid, in violation of state and federal law", namely 21 C.F.R. § 101.22 which regulates the labelling of food containing artificial ingredients, and C.F.R. § 102.5 which provides food labels accurately identify and describe the basic nature of the food, its characterizing properties or ingredients. [*Id.* at ¶ 7.] Further, Plaintiffs contend they relied on the labeling and believed they were buying all-natural products with natural flavoring ingredients, instead of the artificially flavored sparkling water purchased. [*Id.* at ¶ 67.] Both Plaintiffs have purchased the beverages several times, most recently in 2018, with Augustine purchasing the Products at a Ralph's grocery store in San Diego, California and Garfinkel buying the Products at a Ralph's in West Hollywood, California.[2] [*Id.* at ¶¶ 63, 65.] Had the Products not claimed to be naturally flavored, Plaintiffs allege that they would have not purchased them, or alternatively, had they known they were not free of artificial flavoring, they would not have purchased them at the premium price. [*Id.* at ¶¶ 69-72.]

---

[1] The Sparking Ice beverage products at issue include the following flavor varieties: (1) Sparkling Ice Peach Nectarine; (2) Sparking Ice Black Raspberry; (3) Sparkling Ice Grape Raspberry; (4) Sparkling Ice Pomegranate Blueberry; (5) Sparkling Ice Ginger Lime; (6) Sparkling Ice Black Cherry; (7) Sparkling Ice Strawberry Watermelon; and (8) Sparkling Ice Coconut Pineapple. [Doc. No. 12 at ¶ 6.]

[2] Plaintiff Augustine's product purchases are limited to Pomegranate Blueberry, Grape Raspberry and Black Cherry flavors and Plaintiff Garfinkle's flavor purchases are limited to the Peach Nectarine and Black Cherry Sparkling Ice products. [*Id.* at ¶¶ 62, 64.]

Further, the FAC alleges that Defendant's labeling and advertising scheme is deliberately intended to give consumers the false impression that the Products are composed only of natural flavors and contain no artificial colors or flavors. [*Id.* at ¶ 16.] In order to perpetuate the alleged misrepresentation, the label prominently displays a "naturally flavored designation," and omits the legally required "artificially flavored" disclosure, yet an ingredient identified on the back "malic acid," is an artificial flavor. [*Id.* at ¶¶ 17-24.] Subsequent to purchasing the Products, Plaintiffs have tested the Products and confirmed the presence of artificial d-1 malic acid. [*Id.* at ¶¶ 28-36.]

Plaintiffs seek to represent a nationwide class consisting of "all U.S citizens who purchased the Products in their respective state of citizenship on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff." [*Id.* at ¶ 75.] Plaintiffs also seek to represent a California Class defined as "all California citizens who made retail purchases of the Products in California on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and for Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff." [*Id.* at ¶ 76.] The FAC's Prayer for Relief includes, among other things, an order enjoining Defendant's deceptive and unfair practice, requiring it to "conduct corrective advertising," restitution, disgorgement and an award of actual and punitive damages. [*Id.* at 28-20.[3]]

On February 11, 2018, Defendant moved to dismiss Plaintiffs' FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and Rule 12(b)(6). [Doc. No. 18.] Plaintiffs filed an opposition to the motion [Doc. No. 18] and Defendant filed its reply [Doc. No. 19].

---

[3] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

Along with their motions, both parties filed requests for Judicial Notice.[4] [Doc. Nos 15, 18-1.]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiffs have the burden of establishing that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000). In a class action at least one of the named plaintiffs must meet the Article III standing requirements. *Bates v. United Parcel Servs., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007). Article III requires that: "(1) at least one named plaintiff suffered an injury in fact, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citation omitted).

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint

---

[4] Talking Rain asks the Court to take judicial notice of five exhibits: (a) FDA, *Overview of Food Ingredients, Additives & Colors*; (b) FDA, *Regulatory Info*; (c) FDA, *Generally Recognized as Safe (GRAS);* (d) an excerpt for the FDA's *A Food Labeling Guide;* and (e) The Chemical Company, *Malic Acid.* [Doc. No. 15.] Talking Rain moves for judicial notice under Federal Rule of Evidence 201(b), (c)(2), on the grounds that the FDA documents and publications are posted on a government agency website and that The Chemical Company document has been incorporated by reference into the FAC. [*Id.*] Plaintiffs in turn, seek judicial notice of the Order Denying Defendant's Motion to Dismiss in *Young v. Neurobrands, LLC,* Case No. 4:18-cv-05907-JSW (N.D. Cal. Feb 19, 2019) [Doc. No. 18-1.] Neither party has opposed the others' request or challenged the documents' authenticity. Accordingly, the Court takes judicial notice of Defendant's Exhibits A, D, E, F and Plaintiffs' Exhibit 1. *See Gerritsen v. Warner Bros. Entm't, Inc.,* 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 20015) ("[t]he court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies."). However, having not considered Talking Rain's Exhibits B and C, the Court denies those requests as MOOT.

as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted).

Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

Defendant moves to dismiss all of Plaintiffs claims on the grounds that federal regulations expressly preempt Plaintiffs' claims. Defendant also seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition, Defendant moves to dismiss Plaintiffs' nationwide class claims pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court will address each of Defendant's arguments in turn.

**A. Preemption Issues**

First, Defendant asserts that Plaintiffs are seeking to impose duties on Talking Rain that are different than those imposed by federal law and move for dismissal on these

grounds, arguing Plaintiffs' state law claims "would effectively require defendants to include additional or different information on a federally approved label." [Doc. No. 14-1 at 19.] In opposition, Plaintiffs counter that their claims are all based on violations of California's Sherman Law, which is identical to the Federal Food, Drug and Cosmetic Act ("FDCA"), and are therefore not preempted.

The FDCA, 21 U.S.C. § 301 *et seq.*, confers on the Unites States Food and Drug Administration ("FDA") the responsibility for protecting the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2)(A), and to generate definitions and standards for foods, 21 U.S.C. § 341. In 1990, Congress amended the FDCA by enacting the Nutrition Labeling and Education Act ("NLEA") which aimed to strengthen the FDA's ability to mandate what nutritional information was required to be contained on food labels and clarify what claims could be made about nutrients in foods. *See Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111, 1116-1118 (N.D. Cal. 2010) (discussing statutory framework of FDCA and NLEA). The NLEA states that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FDCA]." Pub.L. No. 101-535, §6(c)(1), 104 Stat. 2353, 2363.

California's Sherman Law provides "[a]ll food labelling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." CAL. HEALTH & SAFETY CODE § 110100. "Since California's Sherman Law adopts the FDCA without modification, its identical to the FDCA and can't be preempted by the FDCA." *Branca v. Bai Brands, LLC*, Case No.: 3:13-cv-00757-BEN-KSC, 2019 WL 1082562, at *9 (S.D. Cal. Mar. 7, 2019) (citing *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586, 2013 WL 1320458, at *9 (N.D. Cal. Apr. 1, 2013). However, if plaintiffs seek to impose requirements stricter than the requirements of the FDCA, the claims will be preempted. *Allred v. Frito-Lay N. Am., Inc.,* Case No.: 17-CV-1345 JLS (BGS), 2018 WL 1185227, at *3 (S.D. Cal. Mar. 7, 2018).

### 1. Should Product be Labeled as "Artificially Flavored"

Defendant argue that all of Plaintiffs' claims fail to the extent they are premised on the theory that Talking Rain improperly omitted the words "artificial flavoring" from the front label. In support, Defendant asserts that the FAC offers nothing more than conclusory allegations that the malic acid found in the Sparkling Ice beverages is used as an artificial flavor or a characterizing flavor as defined by the regulations, concluding that "all eight of Plaintiffs' state law causes of action are impermissibly premised, shotgun-style, on this theory." [Doc. No. 14-1 at 19.]

Plaintiffs counter that the FAC sufficiently alleges that testing has confirmed the presence of the synthetic d-1 malic acid, which is an artificial flavoring ingredient, in the Products and that the d-1 malic acid is used to give the Products a tart, fruity taste. [Doc. No. 18 at 12-13.] Further, Plaintiffs assert that the FAC adequately alleges Peach Nectarine, Pomegranate Blueberry and Grape Raspberry Products are characterizing flavors under both sets of regulations and that the synthetic d-1 malic acid used in the Products "stimulates, resembles and reinforces the characterizing fruit flavors for the Products." [*Id.* at 15.]

Federal regulations define artificial flavor or flavoring to mean "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R. § 101.22. In addition, § 101.22(i), states if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavors by word, vignette, e.g., description of a fruit, or other means" then "such flavor shall be considered the characterizing flavor." There are additional regulations regarding when a food may claim to be naturally versus artificially flavored. *See Id.* at § 101.22(i)(1)-2. *See also Viggiano v. Hanson Natural Cor.¸* 944 F. Supp. 2d 877, 888 (C.D. Cal. 2013) (a product may be labeled as "fruit flavored" or "naturally flavored,"' even if it does not contain fruit or natural ingredients, so long as that product "contains natural flavor" which

is "derived from" the "characterizing food ingredient."). For example, if any artificial flavor is contained in the food that "stimulates, resembles or reinforces the characterizing flavor then the food must be labeled as "artificial" or "artificially flavored." 21 C.F.R. § 101.22(i)(2).

Here, Plaintiffs plausibly alleged that the malic acid used in the Products is not the natural form of the L-malic acid that occurs naturally in various types of fruits and vegetables. [Doc. No. 12 at ¶¶ 27-36.] To support their allegations Plaintiffs have tested the Product and identified the malic acid used in the beverages as the synthetic industrial flavoring chemical called d-1 malic acid. [*Id.* at ¶¶ 27-36.] And Plaintiffs have alleged that the Sparkling Ice beverages contain this additional artificial flavoring ingredient to stimulate and reinforce the characterizing flavors. [*Id.* at ¶¶ 26, 27(a)[5], 26(a). 37, 38, 45-49.] Further, Plaintiffs contend that d-1 malic acid used in food products "to make the taste like tangy fresh fruits – like blueberries, lemons, mangos, or cherries, and in the Products Plaintiffs purchases, like the "peach" and "nectarine" flavors advertised." [*Id.* at ¶ 36.] In addition, Plaintiffs allege that d-1-malic acid is used in Peach Nectarine Product to create, stimulate, or reinforce the characterize the peach and nectarine flavor of the Product. [*Id.* at ¶¶ 46, 47.]

Based on the above, Defendant's contention that the FAC lacks well-pled facts that the malic acid in the Sparkling Ice beverages functions as an "artificial flavor" and not a pH control agent or flavor enhancer is unavailing. *See, e.g., Branca,* 2019 WL 1082562, at *9 (distinguishing previous cases where courts had found the FDCA expressly preempted claims for the claims at issue because malic acid, the artificial substance in the defendant's product, is an ingredient that could be considered a flavor under FDA guidelines). Moreover, such arguments are inappropriate for determination at the pleadings stage. *See Ivie v. Kraft Foods Global, Inc.,* No. 12-cv-2554 RMW, 2013 WL 685372, at

---

[5] There are two paragraphs mis-numbered as 27, and 26, between paragraphs 36 and 38 on page 8 of the complaint.

*10 (N.D. Cal. Feb. 25, 2013) (the factual determinations of whether the artificial product is used as a sweetener and/or flavoring agent in the product is inappropriate for determination on a motion to dismiss); *Allred*, 2018 WL 1185227, at *4-5 (whether malic acid is an "artificial flavor" or a "flavor enhancer" under the federal regulations is a factual determination inappropriate at the pleadings stage). Accordingly, to the extent that Plaintiffs' claims are premised on the theory that the words "artificially flavored" are omitted from the front label of the Sparkling Ice beverages, the Court cannot find these claims are preempted. Thus, Defendant's motion to dismiss on this ground is **denied**.

### 2. Should Ingredient List Refer to "Malic Acid" by Its Specific Name

Defendant also argues that all of Plaintiffs' claims fail to the extent they are based on how the term "malic acid" is identified in the ingredient list on the Products. Defendant maintains by using the common "malic acid" name in the list of ingredients it has sufficiently complied with the labeling requirements. [Doc. No. 14-1 at 24-26.] In support, Defendant references the FDA's labeling course summary wherein it was explained that "although companies should use common (non-scientific) names for ingredients, 'ingredient listings cannot list items under vague terms, like 'Meat' or 'Seafood.''' (RJN, Ex. E at 29.)" [Doc. No. 14-1 at 25.] Talking Rain goes on to posit that the portion of Section 101.4(b) Plaintiffs wish to apply is irrelevant because it only applies to terms like meat that encompass may disparate ingredients, like chicken, beef, lank, etc. and is inapplicable to the term "malic acid." Plaintiffs counter that because Defendant used the synthetic version of malic acid on its Products, it violated 21 C.F.R. § 101.4(b)(1) and California's Sherman Law by only identifying malic acid by its common generic name rather than specifying that it was d-1-malic acid. [Doc. No. 18 at 16-18.]

Section 342(i)(2) of the FDCA expressly provides that a food will be deemed misbranded unless the label bears "the common or usual name of each ingredient." 21 U.S.C. § 342(i). Further, 21 C.F.R. § 104(a)(1) & (b) states that ingredients "required to be declared on the label or labeling of a food . . . shall be listed by common or usual name" and "[t]he name of the ingredient shall be listed by a specific name and not a collective

9

(generic) name." Another relevant regulation informs that "Malic acid . . . is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid." *Id.* at § 184.1069(a). It also identifies two forms of malic acid: L malic acid which "occurs naturally in various foods" and DL-malic acid which is commercially manufactured. *Id.*

The regulations require labels to list ingredients by the common or usual names. *See Branca,* 2019 WL 1082562, at *5; *Sims v. Campbell Soup Co.*, Case No. EDCV 18-668 PSG (SPx), 2018 WL 7568640, at *8 (C.D. Cal. Sept. 24, 2018). "The provision instructing that the name 'shall be a specific name and not a collective (generic) name' does not override the 'common or usual name' requirement but instead clarifies that ingredients must be listed separately rather than as a single generic category." *Sims,* 2018 WL 7568640 at *8 (finding support for its position in the FDA guidance document's example that the term sugar instead of the scientific name sucrose should be used on a label); *see also* Doc. No. 15, Exs D, E.

At this stage of the proceedings, the Court cannot say that Plaintiffs' argument is preempted. *See Allred*, 2018 WL 1185227, at *3 ("it is clear that there are two forms of malic acid … [t]hus, the Court cannot say at thia stage that Plaintiffs' argument is preempted."); *see also* Doc. No. 18-1, Ex. 1, *Young v. Neurobrands*, Inc., C 18-05907 JSW, at 8 ("[j]ust as the court found in *Allred v. Frito-Lay,* the Court here cannot say at this procedural stage that the Plaintiffs' argument is preempted.) Therefore, Defendant's motion to dismiss on this ground is **denied**.

### B. Sufficiency of Plaintiffs' Allegations

Second, Defendant contends that Plaintiffs have failed to plead sufficient facts to support their claims, or with the requisite specificity, required by Federal Rules of Civil Procedure 8(a) and 12(b)(6).

#### 1. CLRA, FAL & UCL Claims

Defendant makes two arguments in favor of dismissal of these claims. [Doc. No. 14-1 at 29-31.] First, Defendant asserts that Plaintiffs have failed to explain how its purported violations of FDA labeling violations are misleading to a reasonable consumer.

Second, Defendant contends that because the underlying federation regulatory violation claims fail, Plaintiffs' claims based on the regulatory violations are also meritless. In opposition, Plaintiffs counter that the FAC contains sufficient allegations and since the Products labels affirmatively represent that the Products are made with natural flavors when in fact they contain artificial flavorings, a reasonable consumer would be misled into believing that the products contain all-natural ingredients. [Doc. No. 18 at 22-26.] Plaintiffs have also alleged that had the Products not claimed to be naturally flavored, they would have not purchased them , or alternatively, had they known they were not free of artificial flavoring, they would not have purchased them at the premium price. [Doc. No. 12. at ¶¶ 69-72.]

In order to protect its citizens from unfair, deceptive or fraudulent business practices California has enacted a number of consumer protection statutes. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer." CAL. CIV. CODE § 1770(a). Similarly, the UCL prohibits any "unlawful, unfair or fraudulent business act or practice," and the FAL prohibits any "unfair, deceptive, untrue or misleading advertising."[6] CAL. BUS. & PROF. CODE §§ 17200, 17500. These claims are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The test requires that plaintiff demonstrate "more than the mere possibility that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496 (2003)). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general

---

[6] Any violation of the FAL necessarily violated the UCL. *Williams v. Gerber Products Co.,* 552 F.3d 934, 938 (9th Cir. 2008).

consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotation marks omitted).

Whether a business practice is deceptive will usually be a question of fact not appropriate for determination at the pleadings stage. *Williams*, 552 F.3d at 938. "However, in certain instances, a court can properly make this determination and resolve claims based on its review of the product packaging." *Brown v. Starbucks Corp.*, Case No.: 18cv2286 JM (WVG), 2019 WL 996399, at 3 (S.D. Cal. Mar. 1, 2019) (quoting *Pelayo v. Nestle USA, Inc.* 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013)).

As held above, the Court cannot determine at this stage whether the Products advertising was false or misleading. If it is determined at a later stage in this litigation that Plaintiffs are correct and Talking Rain should disclose its Products contain an "artificial flavor," then it follows that a reasonable consumer would likely be deceived by the Sparkling Ice's label which states "Naturally Flavored Sparkling Water." [Doc. No. 12 at 5.] *See e.g. Allred,* 2018 WL 1185227 at *5 (motion to dismiss denied because court could not conclude as a matter of law that a reasonable consumer would not be deceived by the packaging and ingredient list); *Jones v. ConAgra Foods, Inc.,* 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012) ("[W]here a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."). Therefore, the Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the label and ingredient list. Accordingly, Defendant's motion to dismiss as to the UCL, FAL, CLRA claims is **denied**.

### 2. Claim Under the "Unlawful" Prong of the UCL

Defendant moves to dismiss Plaintiffs' claim under the unlawful prong of the UCL on the grounds that Plaintiffs underlying theories are meritless. [Doc. No. 14-1 at 30.] But, as set forth above, Plaintiffs have stated claims for violations of the CLRA and FLA, therefore these claims may serve as the predicate violations for a claim under the UCL's "unlawful" prong. *Zeiger v. WellPet, LLC,* 304 F. Supp. 837, 852 (Jan. 17, 2018) (holding

CLRA and FAL claims may serve as predicate violations for a claim under the UCL's unlawful prong.) Accordingly, Defendant's motion to dismiss this claim is **denied**.

### 3. Claim Under the "Unfair" Prong of the UCL

Defendant moves to dismiss Plaintiffs' claim under the unfair prong of the UCL because Plaintiffs have failed to tether Talking Rain's conduct to any violation of public policy nor demonstrated that its failure to disclose the information was substantially injurious, immoral, or unethical. [Doc. No. 14-1 at 30-31.]

Determining what constitutes an "unfair" practice under California law is in flux with federal courts applying two tests, a tethering test and a balancing test, under the UCL "Unfair" prong.[7] Traditionally, a practice was held to be "'unfair' when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *South Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861, 886-87 (1999)). Aware of the absence of clarity on how to define unfairness in the consumer fraud context, the Ninth Circuit has instructed that the court must "balance the harm to the consumer against the utility of the defendant's practice." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F.3d 718, 736 (9th Cir. 2007).

Here, Plaintiffs allege the labels on the Products misled reasonable consumers and deceived class members and Plaintiffs into paying a premium price for the product. Plaintiffs also cite to a study indicating how consumers are willing to pay more for foods perceived as natural, and claim all of this was done in order for Defendants to realize higher

---

[7] Under the balancing test, "courts consider the business practice's 'impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer,' and 'weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Becerra v. Gen. Motors, LLC.*, No. 15CV2365-WQH-JMS, 2017 WL 951028, at *10 (S.D. Cal. Mar. 10, 2017) (citing *McKell v. Washington Mut., Inc.,* 142 Cal, App. 4th 1457, 1472 (2006)). The tethering test requires courts to look to whether an alleged misconduct is tethered to a constitutional or statutory provision or a regulation carrying out statutory policy." *Card Tech Int'l, LLP v. Provenzano,* No. CV 11-2434 DSF PLAX, 2012 WL 2135357, at *29 (C.D. Cal. June 7, 2012).

profit margins. [Doc. No. 12 at ¶¶ 8, 52, 71, 129.] It is also alleged that Defendant's utility of selling its Products to consumers who otherwise would not purchase an artificially-flavored food product "is small and far outweighed by the gravity of the harm inflicted on California's consumers." [*Id.* at ¶ 129.] Further, Plaintiffs allege that they have tethered Talking Rain's conduct to a California Health and Safety Regulation, section 110740.

Assuming the truth of Plaintiffs allegations, the Court cannot conclude that Defendant's allegedly misleading and deceptive labeling practices are not unfair, as the harm to the consumer appears to outweigh the utility. Therefore, Defendant's motion to dismiss the "Unfair" UCL claim is **denied**.

### 4. Fraud by Omission Claim on Behalf of California Class

Defendant moves to dismiss the fraud by omission claim asserting that Plaintiffs have not adequately alleged that Talking Rain had a duty to disclose that the beverages contained artificial flavors or that it knew that the labels were false. [Doc. No. 14-1 at 26-28.] Because the Court has held that Plaintiffs pled a violation of FDA flavor regulations, *see supra III.A.1,* the argument for dismissal on the duty to disclose ground is unavailing.

"The elements of a cause of action for fraud in California are (a) misrepresentation (false representation, concealment, or nondisclosure): (b) knowledge or falsity (or scienter): (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012). Under California law, an allegedly fraudulent omission is actionable only if the omission is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144. App. 4th 824, 835 (2006). "California courts have generally rejected a broad obligation to disclose…." *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1141 (9th Cir. 2012).

Plaintiffs' theory of fraud is that Defendant deliberately intended to give consumers the false impression that the Products are composed only of natural flavors and contain no artificial colors or flavors by including pictures of fruit on the front label of its Products and including the words "Naturally Flavored Sparkling Water with Antioxidants and

Vitamins." [Doc. No. 12 at ¶¶ 16, 17, 18.] *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). The FAC contains numerous paragraphs outlining how Defendant misrepresented that the Products were flavored only with natural ingredients when in fact they contained an undisclosed artificial flavor, d-1-malic acid. [*Id.* at ¶¶ 6-8, 16-26, 38, 28.] Plaintiffs have also alleged that had the Products not claimed to be naturally flavored, they would have not purchased them, or alternatively, had they known they were not free of artificial flavoring, they would not have purchased them at the premium price. [*Id.* at ¶¶ 69-72.]

The Court finds that the FAC adequately alleges that the Products are not what they purport to be and that a reasonable consumer will be deceived by such statements. *See Deutsch v. Flannery,* 823 F.2d 1361 (9th Cir. 1987) ("[A] pleading satisfies the particularity requirement of [Rule 9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.") (internal quotations marks omitted). Therefore, Defendant's motion to dismiss the fraud by omission claim is **denied**.

### 5. Negligent Misrepresentation Claim on Behalf of California Class

Defendant seeks to dismiss the negligent misrepresentation claim on the grounds that Plaintiffs have not alleged an actionable misrepresentation or facts to show that it was "careless" and the economic loss doctrine bars Plaintiffs' claim. [Doc. No. 14-1 at 28-29.]

To successfully allege a negligent misrepresentation claim requires a plaintiff allege: (1) a misrepresentation of a past or existing material fact; (2) made without reasonable grounds for believing it to be true; (3) made with the intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Ragland v. U.S. Bank Nat'l Ass'n,* 209 Cal. App. 4th 182, 196 (2012); *see also Hernandez v. Select Portfolio Serv. Inc.*, Case No. CV 15-01896 MMM (AJWx), 2015 WL 12658459, at *10 (C.D. Cal. Oct. 29, 2015) ("Under California law, negligent misrepresentation requires a positive assertion of fact. An implied assertion or representation is not enough.") (internal quotation marks omitted).

"The economic loss rule 'requires a purchaser to recover in contract for a purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Takano v. Procter & Gamble Co.,* No. 2:17-cv-00385-TLN-AC, 2018 WL 5304817, at *11 (E.D. Cal. Oct. 24, 2018) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)). Notwithstanding, the economic loss rule, courts in California have allowed misrepresentation claims to proceed. *See*, e.g., *Takano,* 2018 WL 5304817, at *11 ("Plaintiffs [] cite to several California cases allowing tort claims to proceed notwithstanding the economic loss rule."); *Zakaria v. Gerber Prod. Co¸* No. LA CV15-00200 JAK (Ex), 2015 WL 3827654, at *11 (June 18, 2015) ("California law classifies negligent misrepresentation as a species of fraud for which economic loss is recoverable.").

Here, Plaintiffs have set forth numerous paragraphs outlining how Defendant misrepresented that the Products were flavored only with natural ingredients when in fact they contained an undisclosed artificial flavor, d-1-malic acid. [Doc. No. 12 at ¶¶ 6-8, 16-26, 38, 28.] Relying on the misrepresentations on the label, and believing they were buying naturally flavored sparkling water, Plaintiff Augustine purchased the Product at a Ralph's store in San Diego County, California in 2018 and Plaintiff Garfinkel purchased the Product at a Ralph's store in West Hollywood, California in 2018. [*Id*. at ¶¶ 63, 65.] Finally, the FAC asserts that testing has confirmed that d-1 malic acid, which is a synthetic industrial chemical used to confer a "tart, fruity" flavor to food products, was used in the Products. [*Id.* at ¶¶ 28-36, 27(a)-26(a), 45-47.]

For pleading purposes, Plaintiffs have adequately alleged that Defendant had knowledge that the Products contained artificial flavors while representing that they were all natural. Plaintiffs relied on the misrepresentation to their detriment. Accordingly, for the reasons set forth above, Plaintiffs have adequately pled their misrepresentation claim. Accordingly, the motion to dismiss this claim is **denied**.

### 6. Breach of Express Warranties Claim on Behalf of California Class

Defendant moves to dismiss the breach of express warranties claim arguing that the claim does not adequately identify any warranty or breach thereof and asserting that even if the "naturally flavored" representation" constitutes a warranty, Plaintiffs have failed to allege a subsequent breach because they do not dispute that the Products contain natural flavors. [Doc. No. 14-1 at 31-32.]

To successfully allege a breach of express warranties under California Commercial Code § 2313 requires a plaintiff must allege: (1) the exact terms of the warranty, (2) reasonable reliance thereon, and (3) breach. *See Williams v. Beechnut Nutrition Corp.,* 185 Cal. App. 3d 135, 144 (1986). "Any description of the goods which is part of the basis of the bargain creates an express warranty that the goods shall conform to the description." CAL. COM. CODE § 2312(1)(b). "Statements made by a manufacturer through its advertising efforts can be construed as warranty statements." *Aaronson v. Vital Pharms., Inc,* No. 09-CV-133 W(CAB), 2010 WL 624337, at *6 (S.D. Cal. Feb. 17, 2010).

Plaintiffs allege that the Peach Nectarine Product's front label representations, by the use of the words "naturally flavored," misleadingly suggest the Product contains no artificial flavors and is naturally flavored with fruits such as peaches or nectarines. [Doc. No. 12 at ¶¶ 150, 151.] Further, Plaintiffs allege that the label was "an affirmative representation of the Products composition" and was an express warranty that was breached by Defendant because the Peach Nectarine Product is artificially flavored with d-1 malic acid and does not contain nectarines or nectarine juices. [*Id.* at ¶¶ 46, 47, 152, 153.] Additionally, Plaintiffs have alleged that they purchased the Products but did not receive goods as warranted by Talking Rain. [*Id.* at ¶ 155.]

"Whether the label actually provided a warranty and is likely to deceive a consumer are not appropriate questions to decide on a dismissal motion." *Branca,* 2019 WL 1082562, at *11. For pleading purposes, the Court accepts as true the allegations of the FAC and concludes that Plaintiffs have pled the elements of their breach of express warranty claim. Accordingly, the motion to dismiss this claim is **denied**.

17

### 7. Breach of Implied Warranty on Behalf of California Class

Relying on *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896 (May 13, 2013), Defendant argues that Plaintiffs' claim fails because they must show that the Products did not possess even the most basic fitness for ordinary use. [Doc. No. 14-1 at 33.] Further, Defendant contends that Plaintiffs' claim fails as it never made the representation that Sparkling Ice Products were only flavored with natural ingredients. The Court is not persuaded by Defendant's argument.

California's Commercial Code provides "[u]nless excluded or modified [], a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. CAL. COM. CODE § 2314(1). For goods to be a merchantable, at a minimum, they must be adequately contained, labeled and packaged with the contents conforming "to the promises, or affirmations of fact made on the container or label." *Id.* § 2314(2)(f).

Here, Plaintiffs' breach of implied warranty claim is based on alleged affirmative representations made by Defendant on the labeling of the beverage. Therefore, the claim is not based on the alleged failure by Defendant to conform to the intended purpose of its ordinary use, as Talking Rain suggests. Rather, Plaintiffs have pled that the Products misrepresent that they are "naturally-flavored" sparkling water when the Products in fact contain the artificial flavor d-1 malic acid, which is not disclosed. [Doc. No. 12 at ¶¶ 159-166, 170.] Thus, the Court finds Plaintiffs have adequately stated a claim for breach of the implied warranty. *See Branca,* 2019 WL 1082562, at *11 (declining to dismiss breach of implied warranty claim where plaintiff "maintain[ed] defendant used the artificial versions [of malic acid] without denoting them as such."); *Allred v. Kellogg Co.,* No. 17-CV01354-AJM-BLM, 2018 WL 115885, at *6 (S.D. Cal. Feb. 23, 2018) (holding that plaintiffs adequately pled a warranty of merchantability claim based on allegations that the product's label did not properly disclose "unhealthy" ingredients); *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1104 (S.D. Cal. Nov. 4, 2015) ("the implied warranty of merchantability "is breached when the goods do not conform to the promises or

affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used."). Accordingly, Defendant's motion to dismiss the implied warranties of merchantability claim is **denied**.

## C. Plaintiff's Common Law Claims on Behalf of the Proposed Nationwide Class

Third, Defendant seeks to dismiss the fraud by omission, negligent misrepresentation, breach of express warranties, and breach of implied warranties claims Plaintiffs bring on behalf of the nationwide class. [Doc. No. 14-1 at 33-35.] Defendant contends that Plaintiffs, who are residents of California and only purchased the Products in California, lack standing to assert claims on behalf of a nationwide class under Rule 12(b)(1) to enforce the laws of any other state. In the alternative, Defendant seeks dismissal pursuant to Federal Rule 12(b)(6) asserting there is no way to determine of the multi-state claims have been adequately pled absent the identification of the relevant state laws.

The Court finds Defendant's lack of specificity argument in favor of dismissal to be persuasive.[8] Even if the basic elements of the fraud by omission, negligent misrepresentation, breach of express warranties and breach of implied warranties are unlikely to differ much from state to state, "there may be (and likely are) differences from state to state regarding issues such as applicable statute of limitations and various equitable defenses." *In re TFF-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011); *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.,* Case No. 16-cv-06391-BLF, 2018 WL 1576457, at *4 (N.D. Cal. Mar. 30, 2018) ("As this Court and other courts in this district have recognized "due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal) (quoting *In re Nexus 6P*, 2018 WL 1156861, at *25 (quoting *Romero v. Flowers Bakeries, LLC,* No. 14-CV005189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb 8, 2016))). In order for the

---

[8] Finding the Rule 12(b)(6) argument persuasive, the Court declines to address Defendant's alternative argument for dismissal of the nationwide class claims.

Court to determine whether a claim has been adequately pled, Plaintiffs must allege the applicable law.

Plaintiffs failure to identify which state laws govern their common law claims means the claims brought on behalf of the nationwide class have not been adequately pled. Accordingly, the motion to dismiss the fraud by omission, negligent misrepresentation, breach of express warranties and breach of implied warranties claims brought on behalf of a nationwide class is **granted**. Plaintiffs are granted leave to amend the FAC to assert the applicable state laws.

## IV. CONCLUSION

For the reasons explained above, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**. [Doc. No. 14.] The Court orders as follows:

1. Defendant's motion to dismiss the California Class claims is **DENIED**;
2. Defendant's motion to dismiss the fraud by omission, negligent misrepresentation, breach of express warranties and breach of implied warranties Nationwide Class claims is **GRANTED WITH LEAVE TO AMEND**; and
3. Plaintiffs' claims brought on behalf of a nationwide class are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs have up to an including **May 3, 2019**, to file a second amended complaint addressing the issues related to the claims being brought on behalf of the nationwide class. If Plaintiffs intend to file a second amended complaint that re-assert these claims, Plaintiffs shall file a notice with the Court stating that intention on or before **April 19, 2019**. If Plaintiffs do not file a notice with the Court by April 19, 2019, Defendant shall file its answer to the FAC within the limits established by the Federal Rules of Civil Procedure.

It is **SO ORDERED**.

Dated: April 12, 2019

Hon. Cathy Ann Bencivengo
United States District Judge